**FILED**

**AUG 17 2012**

STEPHEN C. WILLIAMS
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A WARRANT AUTHORIZING THE
ACTIVIATION AND MONITORING OF A
MOBILE TRACKING DEVICE TO BE
LOCATED IN OR ON A 2009 WHITE KIA
MINI-VAN BEARING VEHICLE
IDENTIFICATION NUMBER (VIN)
KNDMB233X96272109

Case No. 12-m-7058

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF A WARRANT FOR THE ACTIVIATION AND MONITORING OF A MOBILE TRACKING DEVICE

I, Kevin Lauman, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 3117 for a warrant authorizing the installation and use of a mobile tracking device on a 2009 White Kia Mini-Van bearing a vehicle identification number (VIN) of KNDMB233X96272109 (the "**TARGET VEHICLE**"), being used by **Cambryn M. BAKER,** and/or others yet unknown, in furtherance of a conspiracy to possess and distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1). The **TARGET VEHICLE** is further described in Attachment A. Pursuant to 18 U.S.C. § 3117(b), a "mobile tracking device" means an electronic or mechanical device which permits the tracking or movement of a person or object. This application seeks authorization for the installation and use of a Global Positioning System (GPS) tracking unit. The requested GPS tracking unit is further described in Attachment B.

2. Your affiant has been a Special Agent with the Drug Enforcement Administration for approximately three years, during which time he has gained experience and undergone

training in the investigation of narcotics trafficking organizations. Prior to assignment with the DEA, your affiant was employed for approximately thirteen years with the St. Louis Metropolitan Police Department, five of which was spent as a Task Force Officer for the DEA St. Louis Division.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, witnesses, Confidential Sources (referred to as CS's), and Sources of Information (referred to as SOI's) . This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the "TARGET OFFENSES") have been committed, are being committed, and will be committed using the **TARGET VEHICLE**. There is also probable cause to believe that the location information described in this affidavit will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed using the **TARGET VEHICLE.** Further, there is probable cause to believe that the **TARGET VEHICLE** has been used by the **Tenaucah LITTLE** Drug Trafficking Organization (DTO) in furtherance of a conspiracy to distribute and possess with intent to distribute Cocaine. Based on surveillance of the **TARGET VEHICLE**, the **TARGET VEHICLE** is known to be operated by **Cambryn M. BAKER.**

6.	Members of the investigative team and I are investigating **Tenaucah LITTLE, Tracy KELLY, Allen REDMOND, Cambryn BAKER** and others known and unknown.

7.	This application is submitted in support of an application to service a Global Positioning Satellite (GPS) tracking device, which is a mobile tracking device, in or on a certain motor vehicle, with service being made by the DEA personnel working with me on the investigation described herein. A previous application for a tracking device on this vehicle was approved by United States Magistrate Judge Donald Wilkerson on July 3, 2012.

8.	In December 2011, investigators were contacted by CS#2, who identified **BAKER** as working for the **LITTLE** Drug Trafficking Organization (DTO). The CS said that **BAKER** makes trips to the Chicago, Illinois area for the purpose of transporting kilogram quantities of cocaine for **LITTLE** to distribute in the Centralia, Illinois area. CS #2 added that **BAKER** drives a white 2009 Kia mini-van bearing Illinois registration, K880622, VIN: KNDMB233X96272109 (**TARGET VEHICLE**). The **TARGET VEHICLE** is registered to Christina Centz, 31 Logan, Aviston, IL 62216, who is believed to be **BAKER's** grandmother.

9.	In prior applications **Allen REDMOND** was referred to as **FNU LNU #1 a/k/a "NORTH"**, but in July 2012, Agents identified **"NORTH"** as **Allen REDMOND**, and user of telephone numbers (773) 592-7726 and (773) 349-1744. **REDMOND**, who lives in Chicago, Illinois, has been identified as a source of supply for the **LITTLE** DTO based on intercepted telephone calls over **LITTLE's** telephone numbers (786) 417-8806, and (786) 375-0695. On June 25, 2012, and July 30, 2012, United States District Judge G. Patrick Murphy signed Orders in the Southern District of Illinois authorizing Title III interception of **LITTLE's** cellular telephone 786-417-8806 and 786-375-0695, respectively. Through a GPS order, CS #2

information, and intercepted telephone calls over **LITTLE's** telephone number (786) 375-0695, Agents believe that **BAKER** is transporting cocaine which **LITTLE** orders from **REDMOND**, from Chicago, Illinois to Centralia, Illinois. CS #2's information has never been found false or misleading, CS #2 is providing this information to aid in Agents fight against illegal drugs.

10. In December 2011, CS#2 advised that **BAKER** drove to Chicago, Illinois, to pick up kilograms of cocaine, and transported the cocaine back to the Centralia, Illinois, area for **LITTLE** to distribute. CS#2 stated on December 14, 2011, **BAKER** told CS#2 that **LITTLE** had paid her $32,000 in U.S. Currency and directed **BAKER** to drive to Chicago to purchase a kilogram of cocaine and then drive the kilogram of cocaine back to one of **LITTLE's** "stash houses" located at 26 Greenview Church Road, Centralia, Illinois (this is **Tracie KELLY's** residence). **BAKER** advised CS#2 that **LITTLE** took possession of the kilogram of cocaine from **BAKER**, and then **LITTLE** took the cocaine into the residence. **BAKER** told CS#2 that she received $3,000 in U.S. currency from **LITTLE** as payment for transporting the cocaine from Chicago. This belief was corroborated by toll analysis of **REDMOND's** telephone number (773) 592-7726 which showed **BAKER's** telephone number (618) 335-8557 had a total of 29 contacts with **REDMOND's** telephone (773) 592-7726 in December 2011.

11. CS#2 advised Agents that CS#2 was with **BAKER** in approximately January 2012, when CS#2 observed **BAKER's** telephone number (618) 335-8557 ringing and saw the name "**NORTH**" along with REDMOND's telephone number (773) 592-7726 on **BAKER's** telephone's LCD screen. This was corroborated when Agents analyzed toll records of REDMOND's telephone number (773) 592-7726 for the month of January 2012 and found that **(773) 592-7726 had** contact with **BAKER's** telephone 95 times during the month of January 2012, based on records Agents had at the time. CS#2 then watched as **BAKER** answered the

telephone and walked out of the area, returning a few minutes later. Upon returning, **BAKER** told CS#2 that **BAKER** had to make a trip up north for **LITTLE**. In a previous conversation, **BAKER** had told CS#2 that **BAKER** had to travel to Chicago, Illinois (which is north of the location where the conversation occurred) in order to pick up kilograms of cocaine for **LITTLE**. This was later corroborated in July 2012 by Agents through the precision location of **for REDMOND's** telephone number (773) 592-7726 which showed **(773) 592-7726** to be located in the Chicago, Illinois, area. Therefore, Agents believe that on this occasion **BAKER** intended to drive to Chicago, Illinois, and pick up kilograms of cocaine from **REDMOND** for **LITTLE** to distribute in the Southern District of Illinois.

    12.    In June 2012, investigators received additional information from CS #2, who indicated that **BAKER** was to drive the **TARGET VEHICLE** to Chicago, Illinois for **LITTLE** and transport cocaine back to Centralia, Illinois. However, CS #2 told Agents the day **BAKER** was to leave for Chicago, Illinois the **TARGET VEHICLE** broke down and needed to be repaired. CS #2 told investigators that **BAKER** still made the trip to Chicago, Illinois and picked up cocaine for **LITTLE,** however, **BAKER** had her grandmother rent a vehicle for her to travel to Chicago, Illinois. Investigators found that **BAKER's** grandmother rented a vehicle that day from Enterprise Rent a Car, O'Fallon, Illinois and listed **BAKER** as an additional driver. Attempts to locate **BAKER** and/or the rental vehicle were unsuccessful until the following morning when investigators observed **BAKER** driving the rental vehicle in the Odin, Illinois area. At that time, investigators believed that **BAKER** had already completed her trip to Chicago, Illinois driving the rental vehicle and had already met with **LITTLE** to deliver the cocaine.

13. On July 3, 2012, a GPS order was granted to Agents for the **TARGET VEHICLE** by United States Magistrate Judge Donald Wilkerson, of the Southern District of Illinois. Agents monitored the GPS data until its expiration on August 16, 2012.

14. On August 10, 2012, at approximately 10:56 p.m., while intercepting LITTLE's telephone number (786) 375-0695, a telephone call was placed to **REDMOND's** telephone (773) 592-772. The following is an excerpt from that conversation.

> **LITTLE**: I said what's the word?
> **REDMOND**: Shit can you send her?

**REDMOND** asks **LITTLE** if **LITTLE** can send "her." Based on Agents knowledge of the investigation, this Agent believes the "her" **LITTLE** and **REDMOND** are referring to is **BAKER**, a courier for the **LITTLE DTO**. **LITTLE** responds by telling **REDMOND** that **LITTLE** did talk to "her" (believed to be **BAKER**) and that **BAKER** would be traveling on August 11, 2012 to meet with and acquire cocaine from **REDMOND** which **LITTLE** had ordered.

15. On August 11, 2012, at approximately 11:45 a.m., Agents began monitoring the GPS on **BAKER's** vehicle at approximately 12:18 p.m., Agents noticed that the GPS data for **BAKER's** vehicle and the precision location data for **LITTLE's** telephone number (786) 375-0695, showed that both **BAKER** and **LITTLE** were located in Centralia, Illinois near Greenview Road. Then, minutes late,r GPS data for **BAKER's** vehicle showed the vehicle to be traveling north on highway I-57 toward Chicago, Illinois. Believing **BAKER's** was going to drive to Chicago, Illinois, pick up cocaine from **REDMOND** (which **LITTLE** ordered), and transport the cocaine back to **LITTLE,** Agents began monitoring the GPS data from the **TARGET VEHICLE**.

16. On August 11, 2012, at approximately 4:32 p.m., while intercepting communications over **LITTLE's** telephone number (786) 375-0695, an incoming telephone called was received from telephone number (773) 349-1744, which was a number used by **REDMOND**. The following is an excerpt from that conversation.

> **LITTLE**: Yeah, is she cool?
> **REDMOND:** Yeah, I'm trying to call her.
> **LITTLE:** She ain't answering you?
> **REDMOND:** Uh huh.
> **LITTLE:** She said she called, she said she called you and you didn't answer.
> **LITTLE:** Oh, hey I'll text you this other number to call her on.
> **REDMOND:** Alright.

During this conversation **LITTLE** is telling **REDMOND** that **BAKER** is trying to call **REDMOND**. Then **LITTLE** tells **REDMOND** that **LITTLE** will send **BAKER**'s other telephone number to **REDMOND**, via text message. NOTE: Minutes later while intercepting communications over **LITTLE's** telephone number (786) 375-0695, a text message was sent to (773) 592-7726, being used by **REDMOND** where **LITTLE** told **REDMOND**, **BAKER's** other telephone number (618) 335-8531. Below is a chart of telephone calls to **REDMOND's** telephone number (773) 592-7726 from **BAKER's** telephone numbers (618) 335-8557 and (618) 335-8531 on August 11, 2012, the date where **BAKER** drove up to meet with **REDMOND** and transport cocaine back to **LITTLE**. The information in this chart corroborates **LITTLE's** statement to **REDMOND** that **BAKER** was attempting to contact **REDMOND** but **REDMOND** didn't answer.

| TYPE OF CALL | TARGET | DATE | TIME | DURATION | NUMBER DIALED |
|---|---|---|---|---|---|
| WIRE | 773-592-7726 | 8/11/2012 | 9:10 AM | 40 | CALLED 618-335-8557 |
| WIRE | 773-592-7726 | 8/11/2012 | 9:13 AM | 32 | INCOMING FROM 618-335-8557 |
| WIRE | 773-592-7726 | 8/11/2012 | 10:11 AM | 157 | CALLED 618-335-8557 |
| TEXT | 773-592-7726 | 8/11/2012 | 12:42 PM | 0 | INCOMING FROM 618-335-8557 |
| TEXT | 773-592-7726 | 8/11/2012 | 1:50 PM | 0 | CALLED 618-335-8557 |
| WIRE | 773-592-7726 | 8/11/2012 | 3:36 PM | 13 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 3:37 PM | 7 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 3:38 PM | 7 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 3:46 PM | 9 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 3:48 PM | 6 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 4:01 PM | 7 | INCOMING FROM 618-335-8531 |
| WIRE | 773-592-7726 | 8/11/2012 | 4:24 PM | 45 | CALLED 618-335-8557 |
| WIRE | 773-592-7726 | 8/11/2012 | 4:26 PM | 59 | CALLED 618-335-8557 |

17. On August 11, 2012, at approximately 5:05 p.m., while intercepting communications over **LITTLE's** telephone number (786) 375-0695, a call was placed to **REDMOND's** telephone number (773) 592-7726. The following is an excerpt from that conversation.

> **REDMOND:** She just left.
> **LITTLE:** Oh, okay I was just seeing if she ever picked up or not.
> **REDMOND:** Yeah, she just left.
> **LITTLE:** Okay.

During this conversation **REDMOND** tells **LITTLE** that "she"(**BAKER**) just left. **LITTLE** responds by asking **REDMOND** if "she" (**BAKER**) ever picked up or not. Based on these series of intercepted telephone calls, and toll records, GPS data on **BAKER's** vehicle, Agents believe that **LITTLE** instructed **BAKER** to drive to Chicago, Illinois and pick up cocaine from **REDMOND** and transport it back to **LITTLE**. **LITTLE** could then distribute this cocaine in the Southern District of Illinois.

18. Believing **BAKER** had met with and acquired the cocaine from **REDMOND**, which **LITTLE** ordered, Agents began to watch the data from **BAKER's** GPS. This data showed **BAKER's** vehicle on interstate 57 near the exit of Halsted Avenue area around 5:02

p.m. Agents know that **BAKER** could exit at Halsted Avenue at interstate 57 to reach 10850 S. Eggleston, one of **REDMOND's** residences. The next GPS data showed at approximately 5:07 p.m., **BAKER's** vehicle was southbound on interstate 57 south of the Halsted Avenue exit. This GPS data information corroborates the previous intercepted telephone call, which occurred at approximately 5:05 p.m., between **LITTLE** and **REDMOND**, where **REDMOND** tells **LITTLE** "she just left." Based on GPS data, intercepted telephone calls over **LITTLE's** telephone number (786) 375-0695, pen/toll records; Agents believe the "she" **REDMOND** and **LITTLE** are referring to is **BAKER**.

19. On August 11, 2012, at approximately 9:25 p.m., using **BAKER's** GPS data and physical surveillance, Agents watched as **BAKER's** vehicle drove to and parked in the back of 733 North Poplar Street, Centralia, Illinois, an address known to Agents as one of **LITTLE's** residences. During this time, Agents positively identified the driver of the vehicle as **BAKER**. Surveillance then watched as **BAKER** and the passenger in **BAKER's** vehicle exited the vehicle and walked over to and entered 733 North Poplar Street. Then at approximately 9:35 p.m., Agents watched as **BAKER** and the passenger in **BAKER's** vehicle re-entered **BAKER's** vehicle and drove off and out of sight.

20. On August 11, 2012, at approximately 10:20 p.m., Agents watched as **LITTLE's** vehicle (vehicle #1: which did not have a GPS order) drove to and parked in the driveway of 733 North Poplar Street, Centralia, Illinois. Agents watched as **LITTLE** exited vehicle #1 and walked into 733 North Poplar Street. At approximately 11:15 p.m., Agents saw **LITTLE** exit 733 North Poplar Street and walk over to and enter vehicle #1. Agents followed vehicle #1 to a remote road, located in Centralia, Illinois. Due to this remote area, Agents did not follow vehicle #1 down the road, but instead Agents maintained a perimeter of the area. At approximately 11:18

p.m., Agents observed a white pickup truck drive down the same road. Agents watched **LITTLE** drive down moments earlier. Around 11:20 p.m., Agents watched as vehicle #1 drove out of the area. At this point Agents terminated surveillance.

21. Based off of intercepted telephone calls over **LITTLE's** telephone number (786) 375-0695, GPS data, precision location data, surveillance, Agents believe that **LITTLE** ordered cocaine from **REDMOND**, the cocaine was transported from Chicago by **BAKER** in the **TARGET VEHICLE to LITTLE. LITTLE** then met with an unknown individual, driving the white pickup truck and supplied this individual with an amount of cocaine **LITTLE** acquired from **REDMOND**.

22. CS #2 did not advise Agents of this last trip **BAKER** took, which leads Agents to believe that **BAKER** could have just transported the cocaine for **LITTLE** without advising CS #2. This diminishes CS #2's ability to aid Agents in this investigation. Based on intercepted telephone calls over **LITTLE's** telephone number (786) 375-0695, surveillance, Agents believe that **BAKER** is still using the **TARGET VEHICLE** to transport cocaine for the **LITTLE** DTO. Therefore Agents request this order be granted so Agents can continue to accumulate evidence against the **LITTLE** DTO.

23. Investigators continue to attempt to conduct surveillance of members of the **LITTLE** DTO. Prior information provided by CS #2, analysis of the **TARGET VEHICLE's** GPS data, accompanied by physical surveillance conducted by investigators, has corroborated the fact that **BAKER** utilizes the **TARGET VEHICLE** to further the transportation of cocaine for the **LITTLE** DTO. Surveillance of the **LITTLE** DTO has proven difficult due to the fact that **LITTLE** and members of his DTO are from a rural environment with ties to members of the community that routinely provide **LITTLE** and members of his DTO with information about

unusual vehicles in the area. With this order, Agents would be able to monitor the **TARGET VEHICLE** from a distance, which would decrease the chance of being spotted by DTO members.

24. Due to the difficulty in locating **BAKER,** investigators believe the global positioning system device (GPS) information is vital to the investigation. The ability to locate **BAKER**, while conducting her drug transporting activities is crucial to obtaining evidence for prosecution. Your affiant, as well as the investigative team, believes that the use of a GPS device on **TARGET VEHICLE,** complimented with surveillance efforts, will reveal the true identity and additional members of the **LITTLE** DTO, uncover the drug distribution network, and identify sources of supply for the **LITTLE** DTO. GPS data for the **TARGET VEHICLE** aided Agents on **BAKER's** August 11, 2012 trip to Chicago, Illinois in identifying a new "stash house" for the **LITTLE** DTO. With the new GPS order, Agents hope to learn more about the **LITTLE** DTO, and gain more evidence against them. However, surveillance without the GPS information on **TARGET VEHICLE** will continue to fail and raise the risk of compromising the investigation and jeopardize the safety of the Agents involved.

25. The GPS device emits an electronic signal that can be located by a location device to be possessed by Agents. The GPS device and location device monitor movement and physical location of the GPS device, but the device is not capable of recording or transmitting any oral, wire, or electronic communications.

26. In the event the Court grants this application, there will be a periodic monitoring of the GPS device, during daytime and nighttime hours for 45 days, following the granting of this order. The GPS device may emit signals from inside private garages or other such locations not open to visual surveillance.

27. The warrant will be executed when the **TARGET VEHICLE** is located in this district. NOTE: The GPS from the previous GPS order, signed on July 3, 2012, is currently located on the **TARGET VEHICLE.**

28. WHEREFORE pursuant to Federal Rule of Criminal Procedure 41, Title 18, United States Code, Section 3117, it is requested that the Court issued this warrant authorizing the installation, maintenance, and monitoring of a GPS tracking unit for 45 days on the **TARGET VEHICLE,** with the installation/maintenance and possible replacement of the GPS unit being made by the investigative team and/or other DEA Agents and/or their authorized representatives.

29. It is further requested that said personnel are further authorized to surreptitiously enter the **TARGET VEHICLE** to affect the service and/or replacement of the GPS device.

30. It is further requested that the Court authorize the continuing GPS monitoring of the **TARGET VEHICLE** no matter the license plates which are affixed to the **TARGET VEHICLE.**

31. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET VEHICLE** outside of daytime hours.

32. It is further requested that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

33. It is further requested that pursuant to Title 18, United States Code, Section 3103a(b) and Federal Criminal Procedure 41 (f) (3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by this warrant.

34. This order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the monitoring of tracking signals.

Respectfully submitted,

_____
Kevin Lauman
Special Agent
Drug Enforcement Administration

Stephen R. Wigginton
United States Attorney

_____
Matthew Brooks
Special Assistant United States Attorney

Subscribed and sworn to before me on August 17th, 2012

_____
Stephen W. Williams
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOS

## ATTACHMENT A

**Property to Be Monitored**

A white 2009 Kia mini-van bearing Illinois registration, K880622, VIN: KNDMB233X96272109, Christina Centz, 31 Logan, Aviston, IL 62216.

## ATTACHMENT B

### Description of the Mobile Tracking Device

The authorized mobile tracking device is a Global Positioning System (GPS) device, which is physically attached to the **TARGET VEHICLE.** The GPS device transmits GPS data regarding the location of the **TARGET VEHICLE** to a tracking device in the possession of the **(Agency).**

This warrant does not authorize the seizure of any tangible property.